(No. 3121—

ROLLA TIPSORD, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 15, 1939.*

JAMES A. LIGHT, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant seeks an award of Nine Hundred Sixteen ($916.00) Dollars for accidental injury sustained while employed by respondent. On September 24, 1936 he was employed by the Division of Highways in highway improvement work on State Aid Route No. 11 near Saybrook, Illinois. While assisting in the construction of a concrete erosion wall, claimant's left hand was caught between a large stone and the wall and the first phalanx of the index finger of the left

hand was crushed. He was immediately taken by his foreman to Dr. James Jensen at Saybrook who dressed the finger and put it in a splint. The doctor at that time stated to claimant that in his opinion the end of the finger would have to be amputated, but claimant postponed any such act because of the hope that treatment might heal the finger without his suffering loss of time or wages, as would be the case if the finger was amputated. Claimant continued to report for duty until November 14, 1936 at which time the work at Saybrook was discontinued and claimant was released. As claimant's finger did not heal he complained to the Highway Division in January, 1937 and arrangements were made for him to be taken to Chicago to Dr. H. B. Thomas. The latter, on March 11th, examined claimant's finger and reported that he had an open osteomyelitis of the bone, service connected. The X-ray showed two sequestra which should be removed. On April 19th claimant was again taken to Dr. Thomas and he was operated on, and the fragments of bone and the balance of the first phalanx of the injured finger were removed. He remained at St. Luke's Hospital until April 21st. He remained in Chicago until April 23rd and again returned to Chicago on April 28th and remained there until May 2nd. He again returned to Chicago June 3rd and was treated by Dr. Thomas until June 14, 1937, when Dr. Thomas reported the injury had reached a permanent stage. The Division of Highways has paid the following bills in connection with claimant's treatment:

| | |
|---|---|
| Dr. James Jensen | $ 29.50 |
| Dr. H. B. Thomas | 141.00 |
| St. Luke's Hospital | 19.50 |
| Mrs. Lizzie Tipsord and Rolla Tipsord, board and lodging | 21.05 |
| | $211.05 |

Claimant had not been employed by respondent for a period of a full year prior to the accident, and as an extra man his wage for compensation purposes would be on the basis of two hundred (200) working days per year. It is stipulated that his average weekly wage was Fifteen and 38/100 ($15.38) Dollars. Claimant at the time of the accident was the father of eight children all under the age of sixteen years, and they and their mother were living with the claimant and dependent upon him for support. Any compensation

due him therefore will, under the provision of Section 8 (j-2) of the Workmen's Compensation Act, be on the basis of a minimum allowance of Fourteen ($14.00) Dollars per week. Under Section 8 (e-2) if claimant had suffered the entire loss of the first finger he would be entitled to Fourteen ($14.00) Dollars per week for a period of forty (40) weeks. Under Section 8 (e-17) he would be entitled to such proportion of forty (40) weeks as the proportion of loss or loss of use of such index finger bears to total loss. Under Section 8 (e-6) the loss of the first phalange of a finger is considered the loss of one-half thereof.

There is no question from the record but what claimant is therefore entitled to an award for the loss of the first phalange of said finger. In considering the testimony relative thereto, we find that the evidence all supports in addition to the loss of the first phalange, further disability to the finger by reason of the resulting stiffness in the middle joint. The evidence therefore supports a finding of seventy-five (75) per cent loss of use of such index finger.

We therefore find that claimant is entitled to an award on the basis of Fourteen ($14.00) Dollars per week for thirty (30) weeks, for seventy-five (75) per cent loss of use of such finger, in the total sum of Four Hundred Twenty ($420.00) Dollars.

In his complaint claimant also seeks an award for Fourteen ($14.00) Dollars per week for nineteen (19) weeks temporary total disability, and Four and 50/100 ($4.50) Dollars per week for twenty (20) weeks temporary partial disability, and acknowledges that respondent has paid him on account of this claim the sum of Eighty-two and 14/100 ($82.14) Dollars from April 18, 1937 to June 14, 1937.

The proof discloses that respondent paid temporary total disability at the rate of Eleven and 22/100 ($11.22) Dollars per week from April 18, 1937 to June 19, 1937, amounting to Ninety-two and 96/100 ($92.96) Dollars.

This case presents a peculiar situation. After having his hand dressed the day of the accident September 24, 1936, claimant returned to work and continued to be employed until November 4, 1936. During this time he was paid full wages but testified that he did not work after the first fifteen minutes, because he was unable to handle a spade and do the required work; that he was kept on the payroll until his crew

was laid off, and that during the last three weeks before the job was finished he was not there half of the time, because he was at home and at the doctor's office, suffering with pain from his injured finger (Transcript p. 21). Claimant was unable to work from November 1, 1936 to April, 1937. On April 6, 1937 claimant was put on WPA work and was paid for six days. Apparently claimant did no work during these six days but drew one pay check, and according to the testimony in the record (Transcript p. 22), such check was just another form of relief so far as claimant was concerned. In February, 1937 claimant was sent to Chicago to be examined by Dr. Thomas. His examinations, treatments and operations continued under the care of Dr. Thomas during which time he stayed in Chicago for several days at a time, returning to Chicago on June 2, 1937 and again later in June. He was discharged by Dr. Thomas on June 14, 1937, with a notation that the finger had reached a permanent stage. During all of the period following the injury on September 24, 1936 to March 11, 1937 claimant's injured finger was draining and chunks of bone were loosening therefrom. After Dr. Thomas discharged claimant on June 14, 1937 his finger continued to drain until about April 10th, but Dr. Thomas' report stands that the injury had reached a permanent condition on June 14, 1937.

Counsel for respondent contends that no award for temporary total disability should be allowed, because claimant was employed and continued to work immediately following the injury and continuously thereafter for over a month, until November 4, 1936. We do not construe the provisions of Section 8 (b) of the Workmen's Compensation Act as meaning that in order to pay under the temporary total incapacity provision of such Act that such temporary total incapacity must start immediately following the accident and be continuous thereafter. It is true that the latter part of such provision reads as follows:

"*Provided*, that in the case where the temporary total incapacity for work continues for a period of more than thirty days from the day of the injury, compensation shall commence on the day after the injury,"

but the intention of this proviso is only for the purpose of allowing compensation for the first six working days in those cases where the disability is serious enough to last for an extended period of time. An injured person might attempt to

work for several days before the effects of his injury would become apparent or develop in seriousness to such an extent that he would be compelled to cease his labor, but in such case the employee would still be entitled to the benefits of the Compensation Act. As to how much time may elapse between the injury and the commencement of temporary total disability, we do not feel called upon to state, as the facts in each case would be material.

In the *United Airlines* case, 265 Ill. 346 the temporary total disability started August 28, 1933, while the injury was incurred April 30, 1932, a period of approximately sixteen months. The term "temporary total incapacity" is used to indicate a preliminary stage of relief or aid for an employee, prior to the time when his injuries may have resulted in a permanent condition of disability. It is sometimes described as the "healing period" or the time during which medical treatment is given to cure or relieve the injured employee from the effects of his injury.

In the case of *Mt. Olive Coal Co.* vs. *Ind. Comm.*, 295 Ill. 429, the court said:

"The period of temporary total incapacity is that temporary period immediately after the accident during which the injured employee is totally incapacitated for work by reason of the illness attending the injury. It might be described as the period of the healing process. 'Temporary' as distinguished from 'permanent' disability is a condition that exists until the injured workman is as far restored as the permanent character of the injuries will permit."

The foregoing statement contains a possible contradiction for it uses the phrase "the period immediately after the accident," and then describes the period of temporary disability as being that of the healing period during which the injured workman is being restored as far as the permanent character of his injury will permit.

We believe that proper cases may exist where the temporary total disability may not commence immediately after the injury, and that the facts in the present case bring it within such a class. The injured condition of claimant's finger was certainly of a temporary character until after the operation, and the fact that he was kept on the payroll while he performed no labor, justifies treating such pay as was given to him during that period, as compensation rather than wages. However, even had he performed some work up to November 4, 1936, and then because of the serious condition

of his finger, been compelled to cease work, he would still, in the opinion of the court, be entitled to compensation for temporary total disability for any compensable time up to the operation that was performed by Dr. Thomas and the claimant's discharge by the latter.

In the case at bar we have an employee who was kept on the payroll, but who apparently performed no remunerative work from the time of his injury on September 24, 1936 until November 4, 1936. He was unemployed from the latter date until June 14, 1937 when his injury was pronounced by the surgeon in charge as having reached a permanent stage in development. During this latter period he was again paid for six days non-productive time by the WPA in April, 1937.

We find that his account should be figured as follows:

37 weeks and 4 days temporary total disability, commencing September 24, 1936, at $14.00 per week..................... $525.00

Deduction for amount paid for non-productive time......... 169.86

Total allowance for temporary total disability........ $355.14

An award is therefore hereby made in favor of claimant for 75 per cent loss of use of the index finger of his left hand, in the sum of........................................ 420.00

A further award is hereby allowed for temporary total disability due claimant in the sum of...................... 355.14

The above awards would be payable on a weekly basis of Fourteen ($14.00) Dollars per week, but as the entire amount has heretofore accrued, the above items are payable at the present time.

This award being subject to the provisions of an Act entitled, "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of·Payment Thereof," approved July 3rd, 1938 (Sess. Laws 1938 p. 83), and being, by the terms of such Act, subject to the approval of the Governor, is hereby, if and when such approval is given, made payable from said appropriation from the Road Fund in the manner provided for in such Act.